**KAPLAN FOX & KILSHEIMER LLP**
Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: 310-614-7260
Facsimile: 310-614-7260
Email: *jfarar@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa R. Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
        *mgeorge@kaplanfox.com*
        *breed@kaplanfox.com*
        *colivares@kaplanfox.com*
*Attorneys for Plaintiff Paul Hanson and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL HANSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SEGWAY INC.,<br><br>    Defendant. | Case No. 2:25-cv-03305<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Paul Hanson ("Plaintiff"), by his undersigned counsel, on behalf of himself and a Class of those similarly situated, brings this action against Defendant Segway, Inc., and alleges based upon personal knowledge of the allegations pertaining to himself, and upon information, belief, and the investigation of counsel as to all other allegations.

## INTRODUCTION

1.    Defendant Segway, Inc. ("Segway" or "Defendant") manufactures and sells a variety of expensive, luxury e-scooters and other forms of mechanized transit.

2.    From January 2020 through February 2025, Defendant sold approximately 220,000 Segway Ninebot Max 30p and Max G30LP Kickscooters (the "E-Scooters") for between $600 and $1,000.

3.    Unfortunately, these expensive E-Scooters contain a dangerous defect in their folding mechanism, such that the handlebars of the E-Scooter can fold and collapse while in use, sometimes flinging consumers off the E-Scooter at high speeds (the "Defect"). Specifically, the folding mechanism's Defect causes the E-Scooter's stem leading to the handlebars to become progressively looser with use.

4.    As a result of the Defect, Defendant has received "68 reports of folding mechanism failures, including 20 injuries to include abrasions, bruises, lacerations and broken bones."[1]

5.    Unsurprisingly, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced on March 20, 2025, a recall of approximately 220,000 E-Scooters manufactured with a defective folding mechanism (the "Recall").

6.    As part of the Recall, consumers have been advised to "immediately stop using the recalled [S]cooters" to avoid injury from the dangerous Defect.[2]

---

[1] https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-Max-G30P-and-Max-G30LP-KickScooters-Due-to-Fall-Hazard-and-Risk-of-Serious-Injury ("CPSC Recall Page"), *last accessed* April 10, 2025.
[2] *Id.*

7.    Moreover, the Recall itself is entirely inadequate. As an initial matter, it provides no monetary remedy whatsoever. Rather than actually recalling and refunding or replacing the unsafe E-Scooters, Defendant instead offers only to send consumers a "free maintenance kit" "include[ing] tools and instructions for checking and tightening the folding mechanism and keeping it properly maintained" (the "Maintenance Kit").

8.    Defendant's Recall process requires consumers to contact Defendant to request the promised Maintenance Kit, but does not inform consumers when they can expect their Maintenance Kit to arrive.

9.    And when the Maintenance Kit does arrive, consumers must attempt to tighten the old, defective folding mechanism on their own, even if they lack the required skills.

10.    Given the nature of the Defect, the Recall Defendant offers in no way remedies the danger posed to consumers, as it does not rectify the *cause* of the Defect. Consumers are not offered a new, safe E-Scooter without the Defect. Instead, they must use the Maintenance Kit to inspect the defective folding mechanism, attempt to secure it, and hope they did a sufficient job so that the E-Scooter does not collapse while they try to use the product, even at the E-Scooter's top speed of 18.6 miles per hour.[3]

11.    They then must constantly monitor the E-Scooter for future manifestations of the Defect.

12.    In addition to the Recall process being unduly burdensome on consumers and offering an inadequate remedy, the notice element of the Recall is also inadequate. There is a significant likelihood that the majority of consumers who purchased or who currently own a Segway E-Scooter will never learn of the Recall.

---

[3] https://store.segway.com/ninebot-kickscooter-max-g30lp ("Ninebot KickScooter MAX G30LP Promotional Page"), *last accessed* April 10, 2025.

13.    This is a dangerous Defect which Defendant knew of or should have known about, and warned customers about, and which has been experienced and reported by disappointed consumers firsthand after the point of sale. No reasonable consumer would purchase an expensive Segway E-Scooter—a product intended to safely and reliably transport consumers whether commuting or enjoying a recreational scooter ride—that has a serious safety Defect that could cause consumers to fall mid-ride or even be flung off the E-Scooter at high speeds, potentially sustaining serious injuries.

14.    Additionally, while there is a significant resale market for used E-Scooter, the defective, recalled Segway E-Scooters in this case have experienced a significant loss in value and useful life because of these issues.

15.    This is not the first recall Defendant has been forced to issue due to manufacturing and selling a defective product. In November 2024, due to a *near-identical* defect in a different model e-scooter, Defendant recalled approximately 1,400 Segway Ninebot P100 KickScooters ("P100 E-Scooters") after 31 reports of defective front fork. Similar to the E-Scooters at issue here, the P100 E-Scooter had a stem that could "break, posing fall and injury hazards to the rider."[4] This defect caused consumers to fall or be flung from the scooter, with 6 reported injuries.[5] Defendant has therefore been put on additional notice of the danger posed by manufacturing and distributing defective products—including with this particular Defect.

16.    For these and the additional reasons described herein, the utility of Defendant's conduct in designing, manufacturing, and selling the E-Scooters is outweighed by the gravity of the consequences to Plaintiff and Class Members. Moreover, Defendant's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and Class Members.

---

[4] https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-P100-KickScooters-Due-to-Fall-and-Injury-Hazards

[5] *Id.*

17.     Through this suit, Plaintiff requests a full refund and/or applicable damages on these dangerous E-Scooters, as well as all other appropriate relief.

## PARTIES

18.     Plaintiff Paul Hanson is currently a resident of Arizona who purchased a Segway Max G30LP Kickscooter E-Scooter from Amazon on July 3, 2021, for $905.26.

19.     At the time of this purchase, Mr. Hanson resided in Washington state.

20.     Defendant Segway Inc. is a corporation registered in Wilmington, Delaware with its principal place of business in California located at 405 E Santa Clara St., Arcadia, CA 91006.

## JURISDICTION

21.     This Court has personal jurisdiction over the Defendant. The Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d). Defendant has transacted business and affairs in California and has committed the acts complained of in California. The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this case is a class action in which some members of the Class and Subclasses are citizens of different states than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. Defendant has maintained its U.S. headquarters in this district, transacted business and affairs in this district, and has committed the acts or omissions complained of in this district.

CLASS ACTION COMPLAINT     Case No. 2:25-cv-03305

# FACTUAL ALLEGATIONS

**A.**   **Segway's E-Scooter and Representations**

23.    Segway designs, manufactures, markets, and sells a variety of powersport vehicles, e-bikes, e-scooters and other products throughout the United States of America.

24.    The Segway E-Scooters at issue in this lawsuit are sold on the Segway website and various retailers, including Amazon, Wal-Mart, and Costco, among others. For example, Segway sells the Ninebot Kickscooter Max G30P—one of the E-Scooters at issue—on its website for a sale price of $549.99.[6] The CPSC notes that the E-Scooters at issue were sold for between $600-$1000.[7]



25.    Segway proclaims itself to be the "global leader"[8] in consumer robotics and proudly advertises that they are the "number one brand in electric Kickscooter sales."[9]

---

[6] https://store.segway.com/ninebot-kickscooter-max ("Ninebot Kickscooter MAX Promotional Page"), *last accessed* April 10, 2025.

[7] CPSC Recall Page.

[8] https://www.segway.com/explore/about-us.html#:~:text=Segway%2DNinebot%20is%20a%20global,in%20self%2Dbalancing%20personal%20transporters, *last accessed* April 10, 2025.

[9] https://www.instagram.com/p/DEk1gqKONTv/, *last accessed* April 10, 2025.

26.    Defendant markets the Segway E-Scooters at issue as a convenient mode of transportation "perfect for smooth, safe rides."[10] Defendant's promotional images consist of adventurous people traversing on the Segway E-Scooters, or the E-Scooters safely carrying riders across various urban terrains and inclines.[11]

27.    On its website, Defendant describes the defective folding mechanism as





a "quick folding system" to fold the E-Scooters, making the E-Scooters portable and easy to carry or store. Defendant claims that it is designed to "take to any destination

---

[10] Ninebot Kickscooter MAX Promotional Page.

[11] *Id.*

you desire effortlessly" and, because it is the same "folding mechanism of [] high-end folding bikes, it is safe and durable."[12]



# Classic Quick Folding System

Ninebot KickScooter MAX G30LP can be folded with ease in a
mere 3 clicks. It is easy to carry on public transportation,
store in your car, and take to any destination you desire
effortlessly. Also, equipped with the folding mechanism of
the high-end folding bikes, it is safe and durable.

28.    Defendant also promotes that the E-Scooters can safely carry riders at a top speed of 18.6 miles per hour through various terrain.[13] The dangerous nature of this Defect becomes clear when one imagines zipping down the bike lane at over 15 miles per hour on an unprotected electric scooter, only to have the supposedly reliable handlebars suddenly collapse.

**B.    The E-Scooters' Defect and Recall**

29.    On March 20, 2025, Defendant and the CPSC recalled approximately 220,000 E-Scooters designed and sold between January 2020 through February 2025

---

[12] *Id.*

[13] Ninebot Kickscooter MAX Promotional Page.

following 68 reports of "folding mechanism failures" including 20 injuries "including abrasions, bruises, lacerations, and broken bones."[14]

30.    According to the Recall Notice, the E-Scooters were designed with a dangerously defective folding mechanism. Due to this defect, the stem leading to the handlebars of the E-Scooters can suddenly come loose, fold, and collapse inward while in use, causing riders to fall or be flung from the E-Scooters, potentially when riding at top speeds.[15]

31.    The Recall advises consumers to "immediately stop using the recalled scooters" and to contact Segway to "receive a free maintenance kit" to tighten the defective folding mechanism and "keep it properly maintained," requiring consumers to constantly monitor their expensive E-Scooters for manifestation of the dangerous Defect.[16]

32.    Put differently, despite Defendant's representations and images of a safe, reliable, convenient and portable e-scooter, the E-Scooters in question do not meet the bare minimum standards of operating with the usual and expected level of safety due to the Defect in the E-Scooter's design that can suddenly fold and collapse while in use, causing riders to fall and sustain serious injuries.

33.    This is an extremely dangerous Defect—the Segway E-Scooters' folding mechanism can fold and collapse on consumers while in normal use, sometimes causing significant injury.

34.    The Defect is a manufacturing defect present in all Segway Ninebot MAX G30P and G30LP E-Scooters sold at the time outlined by the Recall.

35.    The E-Scooters do not display any warning of the dangers posed by the Defect. Nor did Defendant disclose the Defect in any other customer-facing communication in the timeframe outlined in the Recall.

---

[14] CPSC Recall Page.

[15] *Id.*

[16] *Id.*

36.    The Defect renders the E-Scooters unfit for the ordinary purpose of providing a safe and reliable mode of transportation because it exposes consumers to the risk of significant physical harm while in regular use.

37.    Plaintiff and Class Members would not have bought the Segway E-Scooters, or would not have bought them on the same terms, if the Defect had been disclosed.

38.    Accordingly, Plaintiff and Class Members suffered an economic loss at the moment of their purchase of the Defective E-Scooters in the form of overpayment and diminution in value.

39.    The Recall does not make Plaintiff and Class Members whole, as it fails to cure this economic loss stemming from the Defective folding mechanism on the E-Scooters at issue. Plaintiff and Class Members would not have purchased a $600-$1000 E-Scooter they knew could collapse from beneath them and cause serious injury while in ordinary use.

40.    The Recall provides consumers with no monetary relief whatsoever; to the contrary, Defendant explicitly states that "[n]o returns or replacements are involved."[17]

41.    Instead of providing a refund or replacement e-scooter, Defendant's Recall requires consumers to contact Defendant so that they may "determine whether the folding mechanism needs adjustment," and, if the consumer's E-Scooter is deemed needy, Defendant will then provide a Maintenance Kit, to "include tools and instructions for checking and tightening the folding mechanism and keeping it properly maintained."

42.    In other words, Segway does not even offer to replace the Defective folding mechanism—instead outsourcing its duty to provide a safe and reliable E-

---

[17] https://service.segway.com/us-en/g30RecallNotice, *last accessed* April 10, 2025.

Scooter to consumers who must attempt to use the Maintenance Kit to tighten and repair the original, defective folding mechanism to "keep[] it properly maintained."[18]

43.    Because of this, consumers must monitor and repair their expensive E-Scooters as long as they own them to prevent the Defect from manifesting.

44.    Further, the Recall does not compensate for the diminished value, including resale value, or loss of use of the E-Scooter, despite the CPSC's warning that "[c]onsumers should immediately stop using the recalled scooters" until they contact Segway and receive the Maintenance Kit.[19]

45.    Segway has received complaints of the Defect directly from consumers for years, including on its own website. For example, in a comment dated December 30, 2022, one consumer stated that Segway "[s]old me a scooter with a loose stem which came off while riding. Very dangerous and have yet to send someone to repair."[20]

46.    Moreover, Defendant's e-scooters are no stranger to recalls due to falling stems and handlebars.

47.    In November 2024, Segway was forced to recall approximately 1,400 Segway P100 E-Scooters after 31 reports of defective front fork. Similar to the E-Scooters at issue here, the P100 E-Scooter had a stem that could "break, posing fall and injury hazards to the rider."[21] This defect caused consumers to fall or be flung from the scooter, with 6 reported injuries.[22]

48.    Defendant has therefore been put on additional notice of the danger posed by manufacturing and distributing defective products—including with this particular Defect.

---

[18] *Id.*

[19] *Id.*

[20] https://store.segway.com/ninebot-kickscooter-max, *last accessed* April 11, 2025.

[21] https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-P100-KickScooters-Due-to-Fall-and-Injury-Hazards, *last accessed* April 11, 2025.

[22] *Id.*

Case No. 2:25-cv-03305

49. Through this suit, Plaintiff requests a full refund and/or applicable damages on these dangerous E-Scooters, as well as any other appropriate relief.

## PLAINTIFF'S EXPERIENCES

50. Plaintiff Paul Hanson purchased a Segway Max G30LP Kickscooter E-Scooter from Amazon on July 3, 2021, for $905.26.

51. At the time of this purchase, Mr. Hanson resided in Washington state and took delivery of the E-Scooter in Washington state.

52. Mr. Hanson wanted to purchase a safe, reliable, quality electric scooter from a well-known and recognizable brand.

53. As Segway is arguably the most trusted name in the e-scooter industry, Mr. Hanson felt comfortable trusting Segway to get him safely from when riding it.

54. Unfortunately, Mr. Hanson was instead sold an E-Scooter with a dangerous Defect, as described herein.

55. Mr. Hanson experienced this Defect first-hand and has limited his use of the E-Scooter due to its Defect.

56. Mr. Hanson did not receive formal notice of the Recall from Defendant. Instead, he was informed of the Recall by Amazon. Had Mr. Hanson not purchased the E-Scooter through Amazon, he may have never learned of the Defect and inherent dangers of continuing to ride his E-Scooter.

57. Once learning of the Defect, Mr. Hanson contacted Defendant to receive a Maintenance Kit. Mr. Hanson is now a resident of Arizona, and was residing there Arizona during the Recall. Mr. Hanson received the Maintenance Kit to his home in Arizona.

58. The Maintenance Kit is the only remedy Defendant provides. It is insufficient in several respects.

59. First, the Recall does not actually repair or replace the defective E-Scooter with a non-defective E-Scooter. Instead, consumers with no expertise are expected to examine their E-Scooter, identify the defective folding mechanism,

tighten it, and continue monitoring and tightening it for the remainder of the E-Scooter's useful life. In Segway's own words: "the folding mechanism may require periodic checks and tightening."[23]

60. Second, the Recall certainly does not remedy the false representations and omissions Segway has made regarding the E-Scooters, which enticed Mr. Hanson to purchase (and overpay for) the E-Scooter in the first place. It does not make Mr. Hanson whole.

61. Further, Mr. Hanson is not experienced in repairing and maintaining electric powersport vehicles like the E-Scooters at issue, and, like many consumers, may be unconfident that he will be able to properly secure the defective folding mechanism so that it may be safe for him or his friends and family to use.

62. Mr. Hanson would not have purchased an E-Scooter, or would have paid less and/or sought materially different terms, had he known these E-Scooters were defective and not as safe as Defendant represented. Defendant's misrepresentations and omission were substantial factors in Plaintiff's decision to purchase the Segway E-Scooter.

## TOLLING

### A.    Continuing Act Tolling

63. As the creator, designer, manufacturer, and seller of the E-Scooter, Segway has had actual knowledge likely since at least November 2024, when a different Segway e-scooter was recalled for a near-identical defect,[24] and certainly since consumers began reporting injuries and complaining of the Defect to the CSPS, that the E-Scooter is defectively designed and exposes consumers to risk of injury.

64. Nonetheless, Segway issued the Recall only on March 20, 2025.

65. Thus, at all relevant times, Segway possessed continuous knowledge of the material dangers posed by the E-Scooter, and yet Segway knowingly continued

---

[23] https://service.segway.com/us-en/g30RecallNotice, *last accessed* April 14, 2024.

[24] *See* https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-P100-KickScooters-Due-to-Fall-and-Injury-Hazards.

1  to allow the sale of the E-Scooter. Plaintiff's and Class Members' claims are not
2  time barred.

3      66.    Moreover, even after the Recall was initiated, there is no evidence that
4  Segway's Recall Notice has reached all owners of the Segway E-Scooters.

5      67.    Plaintiff and Class Members could not have reasonably discovered and
6  could not have known of these facts, which Segway publicly disclosed for the first
7  time mere weeks ago. Indeed, until it issued the Recall, Segway knowingly failed to
8  disclose material information regarding the existence of the Defect in all E-Scooters.
9  Accordingly, no potentially relevant statute of limitations should apply.

10     **B.    Fraudulent Concealment Tolling**

11     68.    Any applicable statutes of limitations have been tolled or have not run
12 for the additional reason that Segway knowingly, actively, and fraudulently
13 concealed the facts as alleged herein. Segway had actual and constructive knowledge
14 of the dangerous Defect in the Segway E-Scooters since consumers began
15 complaining of injuries to the CSPC.

16     69.    Plaintiff and Class Members have been kept in ignorance of information
17 essential to the pursuit of their claims, and their safety, without any fault or lack of
18 diligence on their part. Segway's concealment of the Defect in the E-Scooter before,
19 during, and after the purchases of Plaintiff's E-Scooter prevented them from being
20 on notice of any facts or information that would have required them to inquire
21 whether Segway fulfilled its duties under the law and, if not, whether Plaintiff and
22 Class Members had legal recourse.

23     70.    At all times prior to, during, and since the purchase of Plaintiff's and
24 Class Members' E-Scooters, Segway has been under a continuing duty to disclose
25 the true facts regarding the safety Defect in the E-Scooter. Because of Segway's
26 willful concealment of material information concerning the E-Scooter over a period
27 of years, Segway is estopped from relying on any statute of limitations defense as to
28 the claims of Plaintiff and Class Members.

### C.   Discovery Rule Tolling

71.   Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their E-Scooters were defective within the time period of any applicable statutes of limitation because, as described herein, only Segway had that information, and Segway was concealing that information from the public.

72.   Indeed, Plaintiff only recently became aware of the E-Scooter's dangerous Defect through no fault of his own.

73.   Plaintiff and other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Segway was manufacturing and marketing the E-Scooter despite being aware it contained a dangerous Defect.

74.   As such, no potentially relevant statute of limitations should be applied.

## CLASS ACTION ALLEGATIONS

75.   Pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff brings this action on behalf of himself and others similarly situated.

76.   Specifically, Plaintiff seeks to represent a Nationwide Class, defined as: "all persons in the United States who purchased or otherwise own one of the Segway Ninebot MAX G30P and G30LP E-Scooters impacted by the Recall (the "Class")."

77.   In the alternative, Plaintiff seeks to represent Subclasses defined as:

"All persons in the Washington who purchased or otherwise own one of the Segway Ninebot MAX G30P and G30LP E-Scooters impacted by the Recall (the "Washington Subclass")"; and

"All persons in the Arizona who purchased or otherwise own one of the Segway Ninebot MAX G30P and G30LP E-Scooters impacted by the Recall (the "Arizona Subclass")."

78.   Excluded from the Class and Subclasses are (i) each Defendant, any entity in which a Defendant has a controlling interest or which has a controlling

interest in any Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the judge's immediate family.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the California Consumers Legal Remedies Act
### (Cal. Civ. Code §§1750, *et seq.*)

79.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

80.    Plaintiff Hanson brings this claim on behalf of himself and the Class.

81.    Plaintiff and the Class Members are "consumers" that purchased "goods" in the form of the E-Scooters within the meaning of California Civil Code section 1761.

82.    Segway is a "person" within the meaning of California Civil Code section 1761(c).

83.    The application of the California Consumer Legal Remedies Act to the putative Class in this action is appropriate because Defendant's wrongful conduct alleged herein, includes but is not limited to Defendant's marketing and sale of defective, unsafe E-Scooter in the state of California, and Segway's unfair and deceptive marketing emanating from its headquarters in Arcadia, California.

84.    The California Consumer Legal Remedies Act, Cal. Civ. Code §1770(a)(5) & (7) provide, in part, as follows:

(a)    The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended result or that results in the sale or lease of goods or services to any consumer are unlawful:

1 . . .

2            (5)    Representing that goods or services have

3                   sponsorship, approval, characteristics, ingredients,

4                   uses, benefits or quantities which they do not

5                   have . . .;

6                         . . .

7            (7)    Representing that goods or services are of a

8                   particular standard, quality, or grade, or that goods

9                   are of a particular style or model, if they are of

10                   another.

11       85.    Segway violated California Consumer Legal Remedies Act, Civil Code

12 section 1770(a)(5), *inter alia*, by representing that the E-Scooter has characteristics,

13 uses or benefits, which it does not have, and/or Civil Code section 1770(a)(7) by

14 representing that the E-Scooter is of a particular standard, quality, or grade, even

15 though it is of another. Such conduct includes, among other things:

16          a.    Designing, manufacturing, marketing, and selling the E-Scooter

17 consumers from its headquarters in Arcadia, California that contained material,

18 fundamental defects without disclosing such defects to consumers;

19          b.    Marketing and selling the E-Scooter when it was not

20 merchantable for the purpose of providing safe transportation;

21          c.    Marketing and selling the E-Scooter while concealing material

22 facts from Plaintiff and Class Members regarding the defects in the E-Scooters that

23 would manifest both within and outside their express or implied warranty periods

24 that would create a safety risk for Plaintiff and Class Members who purchased the E-

25 Scooters to provide safe and reliable mode of transportation;

26          d.    Concealing from Class Members that Defendant was in breach

27 and intended to breach its warranty obligations as set forth in this complaint.

28

86.   Concurrently with the filing of the instant Complaint, Plaintiff is sending a CLRA notice of violation and demand letter to Defendant Segway. Upon response, or non-response within thirty (30) days, to this notice, Plaintiff shall file an Amended Complaint to seek monetary relief from Segway to provide actual, compensatory, statutory, and/or punitive damages.

**COUNT II**
**Unlawful, Unfair, and Fraudulent Business Acts and Practices**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

87.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

88.   Plaintiff Hanson brings this claim on behalf of himself and the Class.

89.   Segway's acts and practices constitute unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law, California Business and Professions Code Section 17200, *et seq.* The application of California's Unfair Competition Law to the putative Class in this action is appropriate because Segway's wrongful conduct alleged herein includes, but is not limited, to Segway's marketing and sale of defective, unsafe E-Scooters in the State of California, and Segway's unfair and deceptive marketing emanating from its headquarters in Arcadia, California.

90.   Defendant engaged in fraudulent, unlawful and unfair business practices in violation of the Unfair Competition Law by, among other things:

a.    Designing, manufacturing, marketing and selling the E-Scooter to consumers from its headquarters in Arcadia, California when it contained material, fundamental defects without disclosing such defects to consumers;

b.    Marketing and selling E-Scooters that were not merchantable for the purpose of providing safe transportation;

c.    Marketing and selling E-Scooters while concealing material facts from Plaintiff and Class Members regarding the defects in the E-Scooters that would manifest both within and outside their express or implied warranty periods that would

1  create a safety risk for Plaintiff and Class Members who purchased the E-Scooters to

2  provide safe mode of transportation;

3        d.    Concealing from Class Members that Defendant was in breach

4  and intended to breach its warranty obligations as set forth in this complaint;

5        e.    Violating additional laws and regulations as set forth herein; and

6        f.    Breaching its express and implied warranties with Class Members

7  as set forth herein.

8        91.    Defendant also violated the Unfair Competition Law because the utility

9  of its conduct as described in this Complaint is outweighed by the gravity of the

10  consequences to Plaintiff and Class Members and because Defendant's conduct as

11  described in this Complaint is immoral, unethical, oppressive, unscrupulous or

12  substantially injurious to Plaintiff and Class Members.

13        92.    Plaintiff, on behalf of himself and Class Members, has suffered injury

14  in the form of lost money and property, including but not limited to a diminishment

15  in the value and useful life of the E-Scooter, as a direct and proximate result of

16  Defendant's fraudulent, unlawful, and unfair business practices and is therefore

17  entitled to equitable relief, including restitution, disgorgement of profits Defendant

18  obtained from its fraudulent, unlawful and unfair business practices, and a permanent

19  injunction that enjoins Defendant from the unlawful practices described herein, as

20  well as attorneys' fees and costs of suit. Cal. Bus. & Prof. Code § 17203.

21  **COUNT III**<br>**Violation of California False Advertising Law**<br>**(Cal. Bus. & Prof. Code §§ 17500,** *et seq.***)**

22

23        93.    Plaintiff incorporates by reference and re-alleges each and every

24  allegation set forth above as though fully set forth herein.

25        94.    Plaintiff Hanson brings this claim on behalf of himself and the Class.

26        95.    Each of the deceptive and misleading advertising practices of Defendant

27  set forth above constitutes untrue or misleading advertising under the California False

28

1  Advertising Law ("FAL"), California Business & Professions Code section
2  17500, *et seq.*

3      96.    At all material times, Defendant's statements and marketing and
4  advertising materials misrepresented or omitted material facts regarding the safety of
5  Defendant's E-Scooter as set forth in this Complaint. Defendant is disseminating,
6  from its headquarters in Arcadia, California, statements, marketing and advertising
7  concerning the useability and safety of its E-Scooter that are unfair, untrue, deceptive,
8  or misleading within the meaning of California Business & Professions Code section
9  17500, *et seq.* Defendant's acts and practices have deceived and/or are likely to
10  continue to deceive Plaintiff, members of the Class, and the public. As set forth
11  above, Defendant's safety and quality claims are deceptive and misleading to
12  reasonable consumers because the folding mechanism on the E-Scooter is defective,
13  making the E-Scooter extremely hazardous as it fails to meet average standards of
14  safety. Moreover, Defendant intentionally does not disclose any of this information
15  to consumers and instead represents that the E-Scooter is beyond average levels of
16  usability and safety.

17      97.    In making and disseminating the statements alleged herein, Defendant
18  knew or should have known its advertisements were deceptive and misleading.
19  Plaintiff and members of the Class based their decisions to purchase and use
20  Defendant's E-Scooter on Defendant's misrepresentations and omissions of
21  material facts.

22      98.    Plaintiff and Class members are entitled to relief, including enjoining
23  Defendant to cease and desist from engaging in the practices described herein, as well
24  as a declaration of rights that Defendant's safety claims are deceptive and misleading.

25
## COUNT IV
### Violation of the Song-Beverly Consumer Warranty Act
26  **(Cal. Civ. Code §§ 1790, *et seq.*)**

27      99.    Plaintiff incorporates by reference and re-alleges each and every
28  allegation set forth above as though fully set forth herein.

100.   Plaintiff Hanson brings this claim on behalf of himself and the Class.

101.   Defendant violated the Song-Beverly Consumer Warranty Act by, among other things, violating the implied warranties of merchantability by knowingly selling defective E-Scooters that are unsuitable for their expected use in violation of sections 1791.1 and 1791.2, and were therefore not fit for the ordinary purpose for which the goods were intended to be sold.

102.   Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

103.   Plaintiff seeks restitution and damages as a result of Defendant's unlawful conduct, as well as attorneys' fees and costs of suit.

### COUNT V
#### Violation of the Washington Consumer Protection Act
#### (Wash. Rev. Code §§ 19.86.10, *et seq*.)
#### (On behalf of the Washington Subclass)

104.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

105.   Plaintiff Hanson brings this claim on behalf of himself and the Washington Subclass.

106.   Defendant is a "person" within the meaning of the Washington Consumer Protection Act ("WCPA") § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of WCPA § 19.86.010(2).

107.   Defendant advertised, offered, or sold the E-Scooters in Washington to Washington consumers and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code § 19.86.010(2).

108.   Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation Wash. Rev. Code § 19.86.010(2) by misrepresenting or omitting material facts regarding the safety of Defendant's E-Scooter as set forth in this Complaint.

109.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the E-Scooters. Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the marketing and sale of the E-Scooters.

110.    The conduct described throughout this Complaint is unfair within the meaning of the WCPA §§ 19.86.010, *et seq.*, because, at all material times, Defendant's statements and marketing and advertising materials misrepresented or omitted material facts regarding the safety of Defendant's E-Scooter as set forth in this Complaint. Defendant is disseminating statements, marketing and advertising concerning the useability and safety of its E-Scooter that are unfair, untrue, deceptive, or misleading. Defendant's acts and practices have deceived and/or are likely to continue to deceive Plaintiff, members of the Washington Subclass, and the public. Moreover, Defendant intentionally does not disclose any of this information to consumers and instead represents that the E-Scooter is beyond average levels of usability and safety.

111.    Defendants engaged in these unfair acts or practices in the conduct of their business.

112.    The acts and practices described herein are unfair because these acts or practices (i) have caused financial injury to Plaintiff and the Washington Subclass members in the form of overpayment for and diminution in value of their E-Scooters; (ii) are not outweighed by any countervailing benefits to consumers or competitors, and (iii) are not reasonably avoidable by consumers.

113.    In making and disseminating the statements alleged herein, Defendant knew or should have known its advertisements were deceptive and misleading. Plaintiff and members of the Washington Subclass based their decisions to purchase and use Defendant's E-Scooter on Defendant's misrepresentations and omissions of material facts.

114. Defendants' misrepresentations are likely to mislead a reasonable consumer acting reasonably under the circumstances.

115. Further, Defendants' acts and practices impact the public interest. Defendants committed the acts and practices in the course of their everyday business; the acts and practices are part of a pattern or generalized course of business; Defendant committed the acts and practices repeatedly and continually both before and after Plaintiff and the Washington Subclass members' purchased Segway E-Scooters; there is a real and substantial potential for repetition of Defendant's conduct; and many customers are affected or likely to be affected.

116. On behalf of himself and other members of the Washington Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages, three times actual damages, and reasonable attorneys' fees.

**COUNT VI**
**Violation of the Arizona Consumer Fraud Act**
**(A.R.S. §§ 44-1521, *et seq*.)**
**(On behalf of the Arizona Subclass)**

117. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

118. Plaintiff Hanson brings this claim on behalf of himself and the Arizona Subclass.

119. Defendant is a "person" and the E-Scooters are "merchandise" as defined by the Arizona Consumer Fraud Act ("ACFA"). *See* A.R.S. § 44-1521(5)-(6).

120. Defendant advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

121. Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of merchandise in violation of A.R.S. § 44-1522(A).

122.    The conduct described throughout this Complaint is unfair within the meaning of the ACFA §§ 44-1521, *et seq.*, because, at all material times, Defendant's statements and marketing and advertising materials misrepresented or omitted material facts regarding the safety of Defendant's E-Scooter as set forth in this Complaint. Defendant is disseminating statements, marketing and advertising concerning the useability and safety of its E-Scooter that are unfair, untrue, deceptive, or misleading. Defendant's acts and practices have deceived and/or are likely to continue to deceive Plaintiff, members of the Arizona Subclass, and the public. Moreover, Defendant intentionally does not disclose any of this information to consumers and instead represents that the E-Scooter is beyond average levels of usability and safety.

123.    Defendants engaged in these unfair acts or practices in the conduct of their business.

124.    The acts and practices described herein are unfair because these acts or practices (i) have caused financial injury to Plaintiff and the Arizona Subclass members in the form of overpayment for and diminution in value of their E-Scooters; (ii) are not outweighed by any countervailing benefits to consumers or competitors, and (iii) are not reasonably avoidable by consumers.

125.    In making and disseminating the statements alleged herein, Defendant knew or should have known its advertisements were deceptive and misleading. Plaintiff and members of the Arizona Subclass based their decisions to purchase and use Defendant's E-Scooter on Defendant's misrepresentations and omissions of material facts.

126.    Defendants' misrepresentations are likely to mislead a reasonable consumer acting reasonably under the circumstances.

127.    On behalf of himself and other members of the Arizona Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages, three times actual damages, and reasonable attorneys' fees.

## COUNT VII
**Breach of the Implied Warranty of Merchantability**

128.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

129.   Plaintiff brings this claim individually and on behalf of members of the Class and Subclasses. *See* Cal. Com. Code §§ 2314, 10212; Wash. Rev. Code §§ 62A.2–314 -315; Ariz. Rev. Stat. §§ 47-2314 -2315.

130.   Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the E-Scooters are merchantable as a reliable, useable, safe scooter for leisurely transportation and other purposes.

131.   Defendant breached the warranty implied in the contract for the sale of the E-Scooter because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

132.   Plaintiff and Class Members purchased the E-Scooters relying on Defendant's skill and judgment in properly packaging and labeling the E-Scooters.

133.   The E-Scooters were not altered by Plaintiff or Class Members.

134.   The E-Scooters were defective when they left the exclusive control of Defendant.

135.   Defendant knew that the E-Scooters would be purchased and used without additional testing by Plaintiff and Class Members.

136.   The E-Scooters were defectively designed and unfit for their intended purpose and Plaintiff and Class Members did not receive the goods as warranted.

137.   As a direct and proximate cause of Defendant's breach of the implied

warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the E-Scooters if they knew the truth about the E-Scooters, and because the E-Scooter they received were worth substantially less than the E-Scooter they were promised and expected.

138.   On behalf of himself and other members of the class, Plaintiff seeks damages.

## COUNT VIII
### Breach of Express Warranty

139.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

140.   Plaintiff brings this claim individually and on behalf of members of the Class and Subclasses. *See* Cal. Com. Code §§ 2314, 10212; Wash. Rev Code § 62A.2–313; Ariz. Rev. Stat. § 47-2313.

141.   Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the E-Scooters are merchantable as a reliable, useable, and safe E-Scooter for transportation.

142.   Defendant breached the warranty implied in the contract for the sale of the E-Scooter because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

143.   Plaintiff and Class Members purchased the E-Scooter relying on Defendant's skill and judgment in properly designing, manufacturing, packaging, and labeling the E-Scooters.

144.   The E-Scooters were not altered by Plaintiff or Class Members.

145.   The E-Scooters were defective when they left the exclusive control of Defendant.

146.   Defendant knew that the E-Scooters would be purchased and used without additional testing by Plaintiff and Class Members.

147.   The E-Scooters were defectively designed and unfit for their intended purpose and Plaintiff and Class Members did not receive the goods as warranted.

148.   As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the E-Scooters if they knew the truth about the E-Scooters and that the E-Scooters they received were worth substantially less than the E-Scooter they were promised and expected.

149.   On behalf of himself and other members of the Class and Subclasses, Plaintiff seeks damages.

<u>**COUNT IX**</u>
**Unjust Enrichment**

150.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

151.   Plaintiff brings this claim individually and on behalf of members of the Class and Subclasses against Defendant. In the alternative, Plaintiff brings this claim on behalf of the Class.

152.   Plaintiff and Class Members conferred benefits on Defendant by purchasing the E-Scooter.

153.   Defendant has knowledge of such benefits.

154.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the E-Scooter. Retention of those monies under these circumstances is unjust and inequitable because Defendant represented that the E-Scooter is safe for its principal use of reliably and safely transporting consumers when it is not.

155.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for its unjust enrichment, as ordered by the Court.

## COUNT X
### Breach of the Magnuson-Moss Warranty Act
### (15 U.S.C. §§ 2301, *et seq.*)

156.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

157.    Plaintiff brings this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

158.    Plaintiff and the other class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

159.    Segway is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

160.    The E-Scooters are "consumer products" within the meaning of § 2301(1).

161.    Segway's express warranty is a "written warranty" within the meaning of § 2301(6).

162.    As detailed above, Segway breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Segway made about the E-Scooters, by failing to truthfully advertise and warrant that the E-Scooters were safe, free of defect, and fit for their intended purpose. The Defect in the E-Scooters existed at the time the E-Scooters left Segway's control and Segway failed to disclose the existence of the Defect either prior to, at the point of, or following sale of the E-Scooters, including when customers contacted Segway to inquire about the E-Scooter's failures. Segway's conduct has rendered the warranties null and caused them to fail of their essential purpose.

163.    Segway's breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

164.    The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

165.    Further, pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff, on behalf of himself and Class Members, sent notice to Segway to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

166.    In addition, resorting to any sort of informal dispute settlement procedure or affording Segway another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Segway has repeatedly mispresented the true quality and nature of the E-Scooter, and has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Segway reasonable opportunity to cure its breaches of warranty is excused and/or has been satisfied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of himself and members of the Class and Subclasses as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class, and Plaintiff's attorneys as Class Counsel;

B.    For an order declaring that Segway's conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff, the Class on all counts asserted herein;

D.    For actual, compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For injunctive relief enjoining the illegal acts detailed herein;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief;

H.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expense and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: April 15, 2025         By: /s/ *Justin B. Farar*
                                        Justin B. Farar

Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: 310-614-7260
Facsimile: 310-614-7260
Email: *jfarar@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa R. Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile:  415-772-4707
Email:  *lking@kaplanfox.com*
          *mgeorge@kaplanfox.com*
          *breed@kaplanfox.com*
          *colivares@kaplanfox.com*

*Attorneys for Plaintiff Paul Hanson and the Proposed Class*